JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Artis Caver, appeals his convictions, rendered after a jury trial, on 25 counts of a 26-count indictment. Caver also challenges his 16-year sentence. We affirm the trial court's judgment. FACTS AND PROCEDURAL HISTORY
 {¶ 2} The record before us demonstrates the following. Caver became the pastor of Harvest Missionary Baptist Church in Cleveland in September 1990. When he began his pastoral duties, the church was struggling with its finances and membership. During his tenure, Caver was able to significantly increase the membership and improve the financial position of the church.
 {¶ 3} Also during his tenure at the church, in 1998, Caver began operating AFC Charters, a private for-profit bus company. The charges in this case stem from Caver's transactions with AFC Charters vis-a-vis the church. Specifically, appellant commingled the church's money with money from his business. Voluminous documentation was admitted into evidence tracing this commingling of funds. The funds were commingled via wire transfers and blank checks written by church trustees that appellant would then negotiate for his personal and/or business use. *Page 4 
 {¶ 4} The record demonstrates that AFC Charters was in trouble financially and appellant used church funds to pay the company's creditors. For example, in 2002, one of the company's main creditors threatened to repossess buses Caver had leased or bought. At the same time, the church, with its growing membership, had outgrown its building and was in the process of trying to build a new church. Caver obtained a $200,000 loan from Geauga Savings Bank, for which he mortgaged the church, which at that point was "free and clear."
 {¶ 5} Three elderly members of the congregation, Clara Thomas, [1]
Johnny Bozeman, and Jackson McCintosh, signed (as church trustees[2]
and personally) for the loan. Documentation showed that $100,000 of the $200,000 loan was directly wired to a creditor of the bus company. The remaining $100,000 was withdrawn by appellant and was unaccounted for.[3]
 {¶ 6} Bozeman testified that it was his understanding that the loan was going to be used for a new church building, and he would not have signed for it if he had known it was going to be used for appellant's bus company. McCintosh testified that appellant told him the loan was for the bus company, to build equity in the company, which would then be used as collateral for the new *Page 5 
church building. McCintosh further testified that at Caver's request, he would cash church checks and give the money to Caver.
 {¶ 7} In obtaining the loan, Caver presented an "authority letter" to the bank; the letter stated that the church had authorized the loan. The testimony at trial revealed, however, that neither the congregation, generally, nor the trustees, specifically, knew of or authorized the letter.
 {¶ 8} Caver's actions came to light in January 2003, when a church member who worked for the Cuyahoga County Clerk of Courts saw that a lien had been filed against the church for failure to make its mortgage payments. In February 2004, a church member's son discovered while on the internet that the church was in foreclosure and about to be sold at sheriffs sale.
 {¶ 9} Charles Richardson, a financial consultant who was hired by Caver to assist with the new church building and the bus company, testified that he advised appellant to stop commingling the church's and the company's funds, even if Caver had the church's authorization to do so, as Caver had represented to him. Richardson denied that he told Caver to use church property to build equity in the bus company, which would then be used to help finance the new church. Richardson terminated his relationship with appellant after he saw the office space appellant had leased after obtaining the $200,000 loan. *Page 6 
 {¶ 10} Caver testified that, as pastor, he had full financial authority and could commingle the church's and bus company's funds. He maintained that he acted on Richardson's (his financial adviser) advice. He also maintained that the purpose of the 2002 loan was fully explained to the signators, and the trustees were fully aware of the money transfers.
 {¶ 11} The county prosecutor began investigating Caver sometime after the congregation learned of his actions, and the case was turned over to the sheriffs office in 2006. The indictment against Caver was returned on November 30, 2007, and contained one count of theft, 21 counts of money laundering, three counts of perjury, and one count of forgery.
 {¶ 12} Upon Caver's request, the original trial date was continued until April 16, 2008. On March 19, 2008, Caver filed another motion to continue the trial because of the voluminous documentation in the case. The court denied the motion. On April 10, appellant filed another motion to continue, based on the same ground as the March 19 motion. The court denied the motion, noting that "[t]he State of Ohio informed defense counsel at 1/8/08 [pretrial] and 1/30/08 [pretrial] that there are multiple boxes of discovery in this case and they needed notice to have it copied in a timely manner. Court has been advised that said discovery was delivered to defense, upon request."
 {¶ 13} On April 16, the day of trial, Caver filed a motion to dismiss, which was denied that same day. The case proceeded to a jury trial. At the conclusion *Page 7 
of the State's case, the defense made a Crim. R. 29 motion for acquittal, which was denied. After presenting a defense, Caver renewed his Crim. R. 29 motion, and it was again denied. The jury found him guilty of all but one count (count 15, money laundering), and he was sentenced to a total 16-year term of incarceration. Appellant raises 16 assignments of error for our review, some of which we consider together where appropriate.
INDICTMENT
1. Statute of Limitations
 {¶ 14} In his first assignment of error, Caver contends that the trial court erred by denying his motion to dismiss the indictment because several of the counts were barred by the statute of limitations.
 {¶ 15} The statute of limitations for a felony is six years. R.C. 2901.13(A)(1)(a). The grand jury returned its indictment against Caver on November 30, 2007. Caver contends that the following counts were barred by the statute of limitations: count one, which alleged theft dating from April 2000 through October 2003; and counts two through ten, which alleged money laundering on various dates in 2000 and 2001, with the last date being October 24, 2001.
 {¶ 16} The statute of limitations can be tolled by R.C. 2901.13(D), which provides: *Page 8 
 {¶ 17} "An offense is committed when every element of the offense occurs. In the case of an offense which an element is a continuing course of conduct, the period of limitation does not begin to run until such course of conduct or the accused's accountability for it terminates, whichever occurs first."
 {¶ 18} The statute of limitations can also be tolled by R.C. 2901.13(F), which provides that "[t]he period of limitation shall not run during any time when the corpus delicti remains undiscovered."[4]
 {¶ 19} The Ohio Supreme Court explained the rationale behind the statute of limitations in State v. Climaco, Climaco, Seminatore,Lefkowitz Garofoli Co., L.P.A., 85 Ohio St.3d 582, 1999-Ohio-408,709 N.E.2d 1192, as follows:
 {¶ 20} "The primary purpose of a criminal statute of limitations is to limit exposure to prosecution to a certain fixed period of time following the occurrence of those acts the General Assembly has decided to punish by criminal sanctions. Toussie v. United States (1970),397 U.S. 112, 114-115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156, 161. This limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.' Id. Additionally, such a *Page 9 
time limit has the salutary effect of encouraging law enforcement officials to promptly investigate suspected criminal activity. Id. We recognized these purposes in Hensley, where we found that the intent of R.C. 2901.13 is to discourage inefficient or dilatory law enforcement rather than to give offenders the chance to avoid criminal responsibility for their conduct. We stated, `[t]he rationale for limiting criminal prosecutions is that they should be based on reasonably fresh, and therefore more trustworthy evidence,' quoting the Ohio Legislative Service Commission comment to R.C. 2901.13."Climaco at 586.
 {¶ 21} In Climaco, the Ohio Supreme Court, however, rejected the State's contention that R.C. 2901.13(F) tolled the statute of limitations. The Court declined to apply R.C. 2901.13(F) to alleged offenses that were discovered within the statute of limitations, stating that "[i]f we were to apply subsection (F) as urged by the state, thereby affording it two years[5] from the discovery of the offense to begin prosecution, the purposes and principles governing criminal statutes of limitations would be defeated." Climaco at 587. The Court added that, "[t]his is glaringly evident here, considering the facts produced in the record." Id. The court did not explain when R.C. 2901.13(F) would be applicable.[6] *Page 10 
 {¶ 22} In State v. Wallace, 160 Ohio App.3d 528, 2005-Ohio-1746,828 N.E.2d 125, this court applied R.C. 2901.13(D) to toll the statute of limitations for a crime that was a continuing course of conduct. Wallace had been found guilty of a single count of theft after she made an application for social security benefits for her minor son, even though she no longer had custody of him and he did not live with her when she submitted the application. Wallace collected social security checks from April 1993 to April 2002.
 {¶ 23} On appeal from her conviction, Wallace argued that her application for social security benefits had been made more than six years before her indictment, so her prosecution was barred by the six-year statute of limitations. This court rejected that argument, stating that:
 {¶ 24} "*** the record supports a finding that Wallace engaged in a continuous course of deception by reporting that her son was still residing with her. Wallace also continued to deprive her son of his benefit distributions and take the money for her own use until April 2002. Accordingly, we find the statute of limitations did not commence until the theft ended in April 2002." Id. at ¶ 29.[7] *Page 11 
 {¶ 25} We find that R.C. 2901.13(D) and (F) tolled the statute of limitations in this case. First, Caver's actions constituted a continuing course of conduct. Although each wire transfer was a separate transaction, together they constituted a continuing course of conduct. This view finds support in other areas of the law. For example, Crim. R. 8(A), governing joinder of offenses provides:
 {¶ 26} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction,or are based on two or more acts or transactions connected together orconstituting parts of a common scheme or plan, or are part of a courseof criminal conduct." (Emphasis added.)
 {¶ 27} Caver's actions in regard to the money laundering were part "of a common scheme or plan, or part of a course of criminal conduct."
 {¶ 28} Second, the crimes were not discovered by the congregation until, at the earliest, 2003. Further, there is no evidence in this case, as there was in Climaco, that the State delayed in investigating this matter. Moreover, Caver *Page 12 
did not file his motion to dismiss until the day of trial, and the record does not demonstrate that he was substantially prejudiced (i.e., unable to prepare a defense) by the pre-indictment delay. See State v.Walls, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶ 51, 778 N.E.2d 829.
 {¶ 29} For the reasons stated above, the trial court properly denied the motion to dismiss and the first assignment of error is overruled.
2. Identically Worded Counts
 {¶ 30} In his third assignment of error, Caver contends that he was denied due process of law because the identically worded counts of money laundering did not inform him of the nature of the offense.
 {¶ 31} Crim. R. 7 provides in pertinent part:
 {¶ 32} "Nature and contents. — The indictment shall be signed, in accordance with Crim. R. 6 (C) and (F) and contain a statement that the defendant has committed a public offense specified in the indictment. *** The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."
 {¶ 33} In Russell v. United States (1962), 369 U.S. 749,82 S.Ct. 1038, 8 L.Ed.2d 240, the United States Supreme Court outlined the criteria for *Page 13 
determining the sufficiency of the indictment. These criteria are: (1) "whether the indictment contains the elements of the offense intended to be charged," (2) "sufficiently apprises the defendant of what he must be prepared to meet," and, (3), "in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." (Citations omitted.) Id. at 763-764. "The due process rights announced in Russell are required not only in federal indictments, but also in state criminal charges. DeVonish v. Keane (C.A.2, 1994), 19 F.3d 107,108; Fawcett v. Bablitch (C.A.7, 1992), 962 F.2d 617, 618; see, also,Isaac v. Grider (C.A.6, 2000), 211 F.3d 1269; Parks v. Hargett, 1999 U.S. App. LEXIS 5133, 1999 WL 157431, at 3 (10th Cir. 1999)."Valentine v. Konteh (2005), 395 F.3d 626, 631.
 {¶ 34} Further, the purpose of a bill of particulars, which Caver requested and the State provided, is to "elucidate or particularize the conduct of the accused alleged to constitute a charged offense."State v. Sellards (1985), 17 Ohio St.3d 169, 171, 478 N.E.2d 781. It also "informs an accused of the exact nature of the charges against him so that he can prepare his defense thereto." State v. Fowler (1963),174 Ohio St. 362, 364, 189 N.E.2d 133.
 {¶ 35} Crim. R. 12(C)(2) provides that defenses and objections based upon defects in the indictment must be raised before trial. Appellant never challenged the sufficiency of the indictment at any time prior to trial; therefore, he has *Page 14 
waived all but plain error with respect to alleged defects in the charging instrument. State v. Brooks, 75 Ohio St.3d 148, 159,1996-Ohio-134, 661 N.E.2d 1030.
 {¶ 36} To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell, 75 Ohio St.3d 163, 166, 1996-Ohio-100,661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Phillips, 74 Ohio St.3d 72, 83,1995-Ohio-171, 656 N.E.2d 643; State v. Ospina (1992),81 Ohio App.3d 644, 647, 611 N.E.2d 989.
 {¶ 37} Upon review, we find that the indictment and bill of particulars sufficiently informed Caver of the specific charges against him so that he could prepare his defense. As such, the third assignment of error is overruled.
3. Culpable Mental State
 {¶ 38} For his thirteenth assignment of error, Caver contends that the money laundering counts were defective under State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, because they failed to allege a culpable mental state. *Page 15 
 {¶ 39} It is true that neither the statute (R.C. 1315.55(A)(1)) nor the indictment specifically identify a culpable mental state for money laundering. The statute, however, proscribes that "no person shall" engage in activity that would constitute money laundering. "`It is well-established that when a statute reads, "No person shall * * *," absent any reference to the requisite culpable mental state, the statute is clearly indicative of a legislative intent to impose strict liability.'" Mayfield Hts. v. Barry, Cuyahoga App. No. 82129, 2003-Ohio-4065, ¶ 42, quoting State v. Cheraso (1988),43 Ohio App.3d 221, 223, 540 N.E.2d 326. "Further, `the legislature, in enacting laws in furtherance of the public health, safety and welfare, may impose strict liability for certain conduct, excluding from the statutory language elements of scienter or guilty knowledge.'" Barry at id., quoting State v. Borges (1983), 10 Ohio App.3d 158, 159-160,460 N.E.2d 1147.
 {¶ 40} Based on the above authority, the thirteenth assignment of error is overruled.
CONTINUANCE
 {¶ 41} Caver contends in his second assignment of error that he was denied due process of law because the trial court denied his motion to continue the trial.
 {¶ 42} The grant or denial of a continuance is within the sound discretion of the trial court. State v. Jones (Dec. 30, 1999), Cuyahoga App. No. 75574. *Page 16 
Appellate courts apply a balancing test to determine whether the trial court abused its discretion with regard to a motion to continue. Id.
 {¶ 43} Here, the State informed the court, in response to Caver's motion to continue, that on the day prior to trial, it received documents from Motor Coach Industries, Inc., relative to Motor Coach's contractual relationship with Caver's bus company. The State informed the court that the documents were not "new" in the sense that it had already provided Caver with the same information contained therein (i.e., the flow of money from the church's accounts to Motor Coach). The State also informed the court that it did not intend to call the Motor Coach representative until five days into the trial.[8]
 {¶ 44} Based on this record, the trial court did not abuse its discretion by denying the motion to continue.
PRIOR CIVIL CASE
 {¶ 45} In his fourth assignment of error, Caver contends that he was denied his Sixth Amendment right to present a defense because the trial court granted the State's motion in limine, which precluded him from referring to the civil case.
 {¶ 46} A trial court has broad discretion in the admission or exclusion of evidence, and absent an abuse of discretion, an appellate should not reverse *Page 17 
evidentiary rulings. Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66,567 N.E.2d 1291.
 {¶ 47} Caver argues that because of the court's ruling, he was prevented from presenting a defense. He does not explain how that was so, however. Our review of the record shows that Caver presented a rigorous defense to the charges against him. Additionally, the civil trial (which settled) was a separate adjudication with a different burden than the one in this case and addressed different issues. It was therefore irrelevant to this case and would have only served to confuse the jury.
 {¶ 48} The trial court did not abuse its discretion by granting the State's motion in limine in regard to the prior civil trial and, accordingly, the fourth assignment of error is overruled.
FAIR TRIAL
 {¶ 49} Caver contends that he was denied a fair trial on several grounds.
1. Prior Conviction
 {¶ 50} In his fifth assignment of error, Caver contends that he was improperly questioned about a 1987 misdemeanor conviction for deceptive practice.
 {¶ 51} Evid. R. 609, governing impeachment by evidence of other crime provides as follows: *Page 18 
 {¶ 52} "For the purpose of attacking the credibility of a witness:
 {¶ 53} "***
 {¶ 54} "***
 {¶ 55} "(3) Notwithstanding Evid. R. 403(A), [9] but subject to Evid. R. 403(B), [10] evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance." Evid. R. 609(A).
 {¶ 56} Thus, pursuant to Evid.R 609(A)(3), evidence involving a prior conviction for a crime of dishonesty is automatically admissible, regardless of the punishment and without consideration of unfair prejudice under Evid. R. 403.
 {¶ 57} The Rule further provides:
 {¶ 58} "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed *** unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. *Page 19 
However, evidence of a conviction more than ten years old *** is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence." Evid. R. 609(B).
 {¶ 59} A review of the record does not show that the State gave notice to Caver of its intention to use the 1987 conviction (and the State does not argue that it did). Further, Caver's counsel objected when the assistant prosecuting attorney started questioning him about the conviction. Nonetheless, we find the error to be harmless under Crim. R. 52(A), which provides:
 {¶ 60} "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."
 {¶ 61} Error in the admission of evidence in a criminal prosecution is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. In order to hold that the error was harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Chapman v. California
(1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; State v. Bayless
(1976), 48 Ohio St.2d 73, 357 N.E.2d 1035.
 {¶ 62} Here, the use of the prior conviction was not absolutely banned; rather, the proper procedure allowing for its use was not followed. On this record, we find that the error was harmless beyond a reasonable doubt.
 {¶ 63} Accordingly, the fifth assignment of error is overruled. *Page 20 
2. Court's Rulings and Comments
 {¶ 64} In his sixth assignment of error, Caver contends that he was denied a fair trial because the trial judge was biased against him.
 {¶ 65} On the issue of bias or prejudice, the Supreme Court of Ohio has noted:
 {¶ 66} "The term `biased or prejudiced,' when used in reference to a judge before whom a cause is pending implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."State ex rel. Pratt v. Weygandt (1956), 164 Ohio St. 463,132 N.E.2d 191, paragraph four of the syllabus.
 {¶ 67} "Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) the burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." (Citation omitted.)State v. Wade (1978), *Page 21 53 Ohio St.2d 182, 188, 373 N.E.2d 1244, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157.
 {¶ 68} One example that Caver cites in support of his contention that the trial judge was biased or prejudiced against him occurred when the court interjected as follows while his attorney was cross-examining one of the State's witnesses:
 {¶ 69} "Q. Isn't it a fact, sir, that if you fail to attend or fail to make donations for a period of time in excess of three months you are stricken from the church records?
 {¶ 70} "The Court: You should answer if you know. If you don't know, don't guess."
 {¶ 71} Upon careful review, we do not find that the above interjection by the court, or any of the other numerous instances of alleged prejudicial or biased actions or comments by the court that Caver cites, demonstrate that the court's actions or comments were prejudicial to him.
 {¶ 72} Accordingly, the sixth assignment of error is overruled.
3. Closing Argument
 {¶ 73} For his seventh assignment of error, Caver contends that he was denied a fair trial and his right to effective assistance of counsel because the court restricted his attorney's closing argument and failed to take corrective action concerning improper prosecutorial argument. *Page 22 
 {¶ 74} "Considerable latitude is permitted in closing arguments, and the question is generally considered one falling in the first instance within the sound discretion of the trial court." State v. Pustare
(1978), 33 Ohio App.2d 305, 312, 295 N.E.2d 210. The principle limitation on the closing argument is that it be confined to evidence adduced at the trial. 27 Ohio Jurisprudence 3d (1981) 177, Criminal Law, Section 947. "The latitude allowed counsel in his or her closing argument is also normally a matter of trial court discretion. The trial court's actions are not overturned absent a showing of abuse of that discretion." State v. Turner (Nov. 7, 1984), Henry App. No. 7-83-9.
 {¶ 75} The trial court did not abuse its discretion by sustaining some of the State's objections to the arguments Caver's attorney attempted to make during closing argument. In particular, counsel attempted to argue points that were not in evidence; for example, Caver's personal issues with one of the State's witnesses and the animosity between himself and another of the State's witnesses.
 {¶ 76} We also find no prosecutorial misconduct. Caver contends that the assistant prosecutor's argument that he was a "thief" was improper. The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused.State v. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. *Page 23 
 {¶ 77} Here, Caver did not object to the assistant prosecuting attorney's comment during closing argument, and thus waived all but plain error. State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 126,767 N.E.2d 166. Accordingly, it would have to be shown that, but for the error, the outcome of the trial clearly would have been different.Waddell, supra at 166.
 {¶ 78} Upon review, we do not find that, but for the assistant prosecutor's statement, the outcome of the trial clearly would have been different.
 {¶ 79} The seventh assignment of error is overruled.
JURY INSTRUCTIONS AND JURY FINDINGS
1. Instruction on Money Laundering
 {¶ 80} For his eighth assignment of error, Caver contends that the court erred in instructing the jury on the money laundering counts. Caver did not object to the court's instructions, however, and therefore has waived any claim of error relative to them, unless, but for the error, the outcome of the trial clearly would have been otherwise.Waddell, supra at 166.
 {¶ 81} In instructing on the money laundering counts, the court defined "corrupt activity" as follows:
 {¶ 82} "engaging in or attempting to engage in or conspiring to engage in or soliciting, coercing or intimidating another person to engage in conduct constituting a violation of Ohio Revised Code Section 2913, which is theft, and/or Ohio Revised Code Section 1315.55[, which is] money laundering." *Page 24 
 {¶ 83} It is Caver's contention that "by including money laundering as corrupt activity when [he] was charged with money laundering compounded the issue. [He] could not be convicted of money laundering when the prosecutor had [to] prove, as an element of the offense[,] that money laundering was corrupt activity." Caver has failed to cite any law or authority to support his position, and we find it not well taken.
 {¶ 84} Caver also contends that the court erred by not defining "property" and "proceeds." A trial court need not define all terms to a jury; generally, it defines only those "technical and legal terms which have a meaning not generally understood by the average juror."Szymczak v. Midwest Premium Fin. Co. (1984), 19 Ohio App.3d 173, 176,483 N.E.2d 851.
 {¶ 85} Based on the above, the eighth assignment of error is overruled.
2. Finding of Value for Theft
 {¶ 86} In his ninth assignment of error, Caver contends that he was denied due process because the jury was not required to make a finding of value on the theft count, which was the underlying basis for the money laundering counts. Caver is mistaken; the jury was required to, and did, make a finding of value (the jury found "that the value of the property or services involved, to-wit: Money, was $100,000.00 or more").
 {¶ 87} Accordingly, the ninth assignment of error is overruled.
3. Jury Unanimity *Page 25 
 {¶ 88} For his tenth assignment of error, Caver argues that he was denied due process of law because jury unanimity was not required in order to find him guilty of theft.
 {¶ 89} The court instructed the jury on the theft count as follows:
 {¶ 90} "Before you can find the defendant guilty you must find beyond a reasonable doubt that on or about April 2000 to October 2003 **** the defendant knowingly did obtain or exert control over money with the purpose to deprive the owner *** of said property or services, which was beyond the scope of the express or implied consent of the owner or person authorized to consent and/or knowingly and by deception obtain or exert control over money with the purpose to deprive the owner *** of said property or services." (Emphasis added.)
 {¶ 91} Caver argues that the "and/or" language was defective. The Supreme Court of Ohio recently addressed this issue, stating:
 {¶ 92} "Although Crim. R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied. Richardson v. United States (1999), 526 U.S. 813,817, 119 S.Ct. 1707, 143 L.Ed.2d 985. Applying the federal counterpart of Crim. R. 31(A), the Richardson court stated that a jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of *Page 26 
the crime.'" State v. Gardner, 118 Ohio St.3d 420, 2008-Ohio-2787,889 N.E.2d 995, ¶ 38.
 {¶ 93} Based upon the above authority, the tenth assignment of error is overruled.
SUFFICIENCY OF THE EVIDENCE
 {¶ 94} For his eleventh assignment of error, Caver contends that the evidence was insufficient to support his convictions.
 {¶ 95} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
1. Forgery
 {¶ 96} R.C. 2913.31(A)(2), governing forgery, provides:
 {¶ 97} "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 98} "*** *Page 27 
 {¶ 99} "(2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed[.]" (Emphasis added.)
 {¶ 100} The basis of the forgery count was the "authority letter" Caver wrote and presented to Geauga Savings Bank to obtain the $200,000 loan. Caver argues that the signature (his) was authentic and, therefore, the letter was authentic. Obviously, one cannot forge one's own signature. The forgery in this case did not relate to the signature, but rather to the spurious nature of the letter. R.C. 2913.01(G) provides that to "`[f]orge' means to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct."
 {¶ 101} The letter was not authentic; the church did not authorize the loan as the letter purported. Accordingly, the evidence was sufficient to sustain the forgery conviction.
2. Money Laundering
 {¶ 102} R.C. 1315.55(A)(1), governing money laundering, provides:
 {¶ 103} "(A)(1) No person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the *Page 28 
proceeds of some form of unlawful activity with the purpose of committing or furthering the commission of corrupt activity."
 {¶ 104} Corrupt activity is defined as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in *** [a] violation of *** [R.C.] 2913.02 [theft] ***." R.C. 2923.31(I).
 {¶ 105} The corrupt activity here was theft. According to R.C. 2913.02:
 {¶ 106} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 107} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 108} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent[.]"
 {¶ 109} The evidence presented at trial showed that Caver purposely deprived the church of its money without the church's consent and beyond the permissible scope of consent. In particular, Caver used the church's money to pay off his business loans. That evidence was sufficient to support the money laundering convictions.
3. Theft *Page 29 
 {¶ 110} Caver contends that he could not be convicted of theft because, as pastor of the church, he was granted authority concerning financial matters. His argument is incredible. Clearly, Caver's position did not allow him to take church funds, without the knowledge and consent of his congregation, for his own personal and/or business use.
4. Perjury
 {¶ 111} R.C. 2921.11(A), governing perjury, provides that:
 {¶ 112} "(A) No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material."
 {¶ 113} The perjury convictions were based upon statements Caver made in a prior trial and depositions. Caver contends that the convictions cannot be sustained because the alleged perjured testimony was "a single answer" "excerpted" from a proceeding (the transcripts from which total 449 pages), at which he was subjected to "extensive questioning *** by numerous lawyers."
 {¶ 114} We are not persuaded. One issue relative to perjury revolved around whether Caver wrote a check from a National City Bank account. On two occasions (a September 3, 2004 deposition and October 11, 2004 deposition), Caver made false representations relative to same. The other issue revolved *Page 30 
around Caver's procurement of the loan from Geauga Savings Bank, and occurred when Caver testified in a March 2007 trial that the entire board of trustees approved the loan, that a lot of money had been moved from the bus company's account to the church's account, and the loan money was used to buy property surrounding the church and start construction of the new church building. Evidence was presented that all of the above testimony was false. Moreover, Caver's statements were not isolated incidents, as he suggests. There was sufficient evidence to support the perjury convictions.
 {¶ 115} Accordingly, because all the convictions were supported by sufficient evidence, the eleventh assignment of error is overruled.
FREEDOM OF RELIGION
 {¶ 116} Caver contends in his twelfth assignment of error that the prosecution interfered with his pastoral duties and thus his right to religious freedom.
 {¶ 117} This argument is, on its face, completely meritless, and the twelfth assignment of error is therefore overruled.
SENTENCING
1. Religious Precepts
 {¶ 118} In his fourteenth assignment of error, Caver contends that the trial court based its sentence on religious precepts. For example, Caver complains that the trial judge stated she was Catholic and found "it offensive as *Page 31 
a Christian that anybody would come in here and use the name of God to me after you used the name of God to fleece people out of everything that they had
 {¶ 119} The Ohio Supreme Court considered whether a sentencing judge violated the statutory requirements of the Revised Code or the constitutional dictates of due process when she referred to the Bible during her deliberations, and then quoted a biblical passage on the record at the sentencing proceeding. State v. Arnett, 88 Ohio St.3d 208,2000-Ohio-302, 724 N.E.2d 793. The Court held that, "[b]ecause we determine that the trial court complied with the applicable provisions of R.C. Chapter 2929 and that the judge's reference to the Bible did not impair the fundamental fairness of the proceedings, we reverse the judgment of the court of appeals and reinstate the trial court's sentence." Id. at 212.
 {¶ 120} Here, the court considered the relevant factors set forth in R.C. 2929.12. In particular, the court found that Caver was in a position of great trust, his actions impacted the community, and the impact will be felt for years to come. The court complied with R.C. 2929
and her reference to religion did not impair the fundamental fairness of the proceedings. The fourteenth assignment of error is overruled.
2. Lack of Remorse *Page 32 
 {¶ 121} For his fifteenth assignment of error, Caver contends that he was denied his Fifth Amendment rights at sentencing when the trial court found that he failed to accept responsibility and have remorse for his actions. According to Caver, the court punished him for his silence with its finding of no remorse, after advising him that he was free to speak or not.
 {¶ 122} Whether an offender shows genuine remorse is a factor for the court to consider under R.C. 2929.12(D)(5), which sets forth factors indicating that the offender is likely to commit future crimes.[11]
Further, it is settled law that credibility is for the trier of facts and "where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Myers v.Garson (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742. As the Supreme Court of Ohio observed in Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 461 N.E.2d 1273:
 {¶ 123} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80. Such deference is particularly important in light of research that *Page 33 
indicates that as much as "ninety percent of the total meaning of testimony is interpreted through non-verbal behavior, such as voice inflection, hand gestures, and the overall visual demeanor of the witness. The witness' choice of words accounts for only ten percent of the meaning of their testimony." State v. Evans (1993),67 Ohio St.3d 405, 410-411, 618 N.E.2d 162. The demeanor, attitude, and credibility of witnesses does not translate well to the written page. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159.
 {¶ 124} Here, the sentencing judge who presided over the trial, was in the best position to assess Caver's remorse, and therefore, we give deference to her finding. The fifteenth assignment of error is overruled.
3. Sentence Based on the Court's Own Fact-finding
 {¶ 125} In his sixteenth and final assignment of error, Caver contends that the court sentenced him based on its own fact-finding and cites the court's references to religion. Caver further contends that "the imposition of consecutive sentences was contrary to the presumption of Ohio law that sentences shall be served concurrently."
 {¶ 126} This court reviews a felony sentence pursuant to the two-prong standard set forth by the Ohio Supreme Court in State v. Kalish,120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124:
 {¶ 127} "In applying [State v.] Foster [109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470] to the existing statutes, appellate courts must apply a two-step *Page 34 
approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." Id. at ¶ 4.
 {¶ 128} In regard to the imposition of consecutive sentences, we note the Ohio Supreme Court's recent decision in State v. Hairston,118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073. In upholding a 134-year sentence, the Supreme Court in Hairston stated that, "[w]e have expressly held that trial courts have discretion to impose a prison sentence within the statutory range for the offense." Id. at ¶ 21, citing Foster, supra.
 {¶ 129} After Foster, "the trial court is no longer compelled to make findings and give reasons at the sentencing hearing since R.C. 2929.19(B)(2) has been excised; nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself." State v.Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38, 846 N.E.2d 1. *Page 35 
 {¶ 130} The record indicates that the trial court considered the required statutory provisions in sentencing Caver. Additionally, the imposed sentence was within the statutory range. Under Kalish, therefore, the first prong is satisfied. As the trial court's decision was not clearly and convincingly contrary to law, we next review the trial court's sentence under the "abuse-of-discretion standard," the second prong of the standard set forth in Kalish.
 {¶ 131} "An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 132} We have already dismissed Caver's claims that the court improperly sentenced him based upon religious precepts and/or an incorrect finding of lack of remorse. Simply, there is nothing in the record to suggest that the trial court's sentencing decision was unreasonable, arbitrary, or unconscionable. The second prong ofKalish therefore is satisfied.
 {¶ 133} Accordingly, the sixteenth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. *Page 36 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and ANN DYKE, J., CONCUR
[1] Thomas was unable to testify at trial because of physical limitations.
[2] Bozeman signed as a trustee although he in fact was not.
[3] Shortly after obtaining the loan, however, appellant signed a lease for a downtown office, defaulted on the lease, and had a $145,480 judgment entered against him.
[4] In cases other than those involving child abuse, discovery of the corpus delicti occurs "when any competent person other than the wrongdoer or someone * * * [equally at fault] with him has knowledge of both the act and its criminal nature * * *." State v. Hensley (1991),59 Ohio St.3d 136, 137, 571 N.E.2d 711.
[5] The crime involved in Climaco was a misdemeanor, and thus subject to a two-year statute of limitations.
[6] The dissent in Climaco disagreed with the Courts holding in regard to R.C 2901.13(F), stating that the majority read the governing two-year statute of limitations for misdemeanors "in isolation" and "in doing so, disregarded the clear statutory language employed by the General Assembly in R.C. 2901.13(F)." Climaco at 589 (Moyer, C.J., dissenting; Cook, J., concurring in dissenting opinion.)
[7] But, see, this court's opinion in State v. Rodriguez, Cuyahoga App. No. 89198, 2007-Ohio-6835, declining to find a continuing course of conduct relative to several counts of tampering with records. In that case, Rodriguez was charged with 17 counts of tampering with records for allegedly using a fake social security card to obtain titles to motor vehicles. He contended that the statute of limitations had run on some of the counts. This court agreed, finding that "[t]he 17 counts of the indictment related to 17 different applications for a title to a motor vehicle. All 17 of these applications used the same fraudulent social security number. These 17 offenses were distinct, and each was completed when Rodriguez made the application for a title." Id. at ¶ 25. (See Kilbane, J., dissenting, finding a continuing course of conduct.)
[8] The representative was the last of the State's 17 witnesses to testify. The trial started on Wednesday, April 16, 2008, and the State rested its case after the representative's testimony on Wednesday, April 23.
[9] The rule provides, "[although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
[10] The rule provides, "[although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
[11] It has been held, for example, that "lack of remorse is an appropriate consideration for sentencing, even for a convicted defendant who maintains his innocence." State v. Farley, Miami App. No. 2002-CA-2, 2002-Ohio-6192, at ¶ 54. *Page 1