[Cite as *State v. Brown*, 2011-Ohio-1461.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### ALLEN COUNTY

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**               **CASE NO. 1-10-31**

    **v.**

**NEAL D. BROWN,**                       **O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR 2009 0076**

**Judgment Affirmed**

**Date of Decision:   March 28, 2011**

**APPEARANCES:**

    *Kenneth J. Rexford* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Neal D. Brown (hereinafter "Brown"), appeals the judgment of conviction and sentence entered against him in the Allen County Court of Common Pleas following a jury trial in which Brown was found guilty of multiple counts of possession of cocaine and crack cocaine. For the reasons that follow, we affirm.

{¶2} On March 9, 2009, the Allen County Grand Jury returned an indictment against Brown charging him with the following four counts: count one of possession of crack cocaine in an amount equal to or exceeding ten grams but not exceeding twenty-five grams in violation of R.C. 2925.11(A)&(C)(4)(d), a felony of the second degree; count two of possession of cocaine in an amount equal to or exceeding one thousand grams in violation of R.C. 2925.11(A)&(C)(4)(f), a major drug offender felony of the first degree; count three of possession of crack cocaine in an amount equal to or exceeding one gram but not exceeding five grams in violation of R.C. 2925.11(A)&(C)(4)(b), a felony of the fourth degree; and count four of possession of cocaine in an amount equal to or exceeding five grams but not exceeding twenty-five grams in violation of R.C. 2925.11(A)&(C)(4)(b), a felony of the fourth degree. Counts one and three also contained forfeiture specifications.

{¶3} On March 16, 2009, Brown entered a plea of not guilty to all the charges in the indictment.

{¶4} On June 16, 2009, Brown filed a motion to suppress evidence that had been seized pursuant to a search warrant served at 110 East 14th Street in Allen County, Ohio, on September 3, 2008. On July 21, 2009, a hearing commenced on Brown's motion to suppress, which was concluded on July 28, 2009. Afterwards, on August 24, 2009, the trial court filed its judgment entry overruling Brown's motion to suppress.

{¶5} Subsequently, on March 22-24, 2010, a jury trial was held on the case, and after the presentation of evidence, the jury returned verdicts of guilty as to each of the four counts in the indictment. The jury only found that one vehicle possessed by Brown was subject to forfeiture.

{¶6} On April 6, 2010, a forfeiture and sentencing hearing was held. With respect to the forfeiture issue, after giving the parties the opportunity to be heard, the trial court ordered that a 1996 Chevrolet Tahoe be criminally forfeited. Finally, with respect to sentencing, after both parties presented their respective arguments, the trial court sentenced Brown as follows: seven (7) years in prison on count one; eighteen (18) years in prison on count two; one (1) year in prison on count three; and one (1) year in prison on count four. Additionally, the trial court ordered that the sentences imposed in counts one and three run concurrently to one

another, and that the sentences imposed in counts two and four also run concurrently to one another, but that the sentences imposed in counts one and three were to run consecutive to the sentences imposed in counts two and four, for a total sentence of twenty-five (25) years in prison.

{¶7} Brown now appeals and raises the following seven assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT [SIC] DENIAL OF THE DEFENSE MOTION TO SUPPRESS ERRANTLY VIOLATED MR. BROWN'S RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES, AS PROTECTED BY BOTH THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION.**

{¶8} In his first assignment of error, Brown argues that the trial court erred in denying his motion to suppress. In particular, Brown claims that there were the following problems with the information contained in the affidavit for the original search warrant issued in this particular case: (1) that the trial judge had been misled by information in the affidavit that the affiant had known was false or would have known was false but for the affiant's reckless disregard for the truth; (2) that the affiant did not have personal knowledge of all of the information put into the affidavit; (3) that officers had not observed an actual drug transaction take place at 110 E. 14th Street, Lima, Ohio; and (4) that the scope of the warrant had

been limited to only the residence at 110 East 14th Street, Lima, Ohio, and did not include any outbuildings or vehicles at that location.

{¶9}   We note that an appellate court's review of a decision on a motion to suppress evidence involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8.   At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses.   See *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965.   When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence.   *Burnside*, 2003-Ohio-5372, at ¶8.   With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard.   *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539.

{¶10} In reviewing the affidavit in this case, we are guided by the following instruction by the Ohio Supreme Court:

> **[i]n determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place."**

*State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527.  Probable cause is defined as "'less than evidence which would justify condemnation * * *.  It imports a seizure made under circumstances which warrant suspicion.'"  *Gates*, 462 U.S. at 235, quoting *Locke v. United States* (1813), 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364.  Consequently, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trial, have no place in the magistrate's decision. * * * it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'"  *Gates*, 462 U.S. at 235, quoting *Spinelli v. United States* (1969), 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637, abrogated by *Gates*, 462 U.S. at 235-36.

{¶11} Moreover, because of this totality-of-the-circumstances approach, an appellate court's role is limited to simply "ensur[ing] that the magistrate had a substantial basis for concluding that probable cause existed."  *George*, 45 Ohio St.3d at paragraph two of the syllabus.  The issuing judge or magistrate should be accorded great deference, "'and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.'"  *State v. Gipson*, 3d Dist. No. 5-09-19, 2009-Ohio-6234, ¶17, quoting *George*, 45 Ohio St.3d at 229-30, citing *Gates*, 462 U.S. at 235.

{¶12} In this case, the affidavit at issue on appeal is the Affidavit for the Search Warrant sworn to by Investigator Dan Howard on September 3, 2008, which consisted of the following information:

1. Investigator Dan Howard, an officer with the Allen County Sheriff's Department, has 12 years of law enforcement experience and is currently assigned to the West Central Ohio Crime Task Force ("W.C.O.C.T.F.") where he has received specialized narcotics training and worked numerous controlled drug buy cases;

2. On September 2, 2008, officers from the West Central Ohio Crime Task Force had been involved in the controlled purchase of crack cocaine from David Doyle during which time Doyle drove to a location where Lindsay Gamble was at and spoke to Gamble; Gamble then drove to 110 E. 14th Street, Lima, Allen County, Ohio and was observed to walk behind the residence there, be out of sight for 15-20 seconds before leaving the area and driving back to Doyle; after this meeting with Gamble, Doyle then drove to his original location and sold crack cocaine to a confidential informant;

3. Both Lindsay Gamble and David Doyle are known crack dealers, and Lindsay Gamble goes by the nickname of "Snook";

4. Investigator Howard checked the West Central Ohio Crime Task Force tip sheets and found the following:

   a. On September 25, 2007 – DEA received information that Neal Brown is a main supplier, lives at the corner of 14th and Main Street, and has Snook selling for him

   b. On November 27, 2007 – DEA received information that Lindsay Gamble, aka Snook, was dealing heavily and getting drugs from Neal Brown at 14th and Main Street

   c. On August 20, 2008 – DEA received information that Neal Brown was dealing heavily from an address on 15th Street

5. On September 3, 2008, Investigator Howard determined that 110 E. 14th Street, Lima, Allen County, Ohio is owned by Ruby Brown and is believed to be occupied by Neal Brown;

6. A confidential informant who has been proven credible and reliable confirmed that Neal Brown lives at 110 E. 14th Street, Lima, Allen County, Ohio and is a well known drug trafficker and that he is known to carry a firearm on his person, and has several at his

disposal inside his residence, and has the potential for violence towards law enforcement personnel;

7. A different confidential informant who has been proven credible and reliable confirmed that Neal Brown lives at 110 E. 14th Street, Lima, Allen County, Ohio and is a well known drug trafficker;

8. A computerized criminal history ("C.C.H.") was run and revealed that a Neal Brown has numerous violent felony convictions in the State of Florida in 1989 and 1993 as well as an instance of resisting an officer with violence;

9. On September 3, 2008, Investigator Howard observed Lindsay Gamble arrive at 110 E. 14th Street, Lima, Allen County, Ohio, and again walk to the rear of the house during which time a black male fitting the description of Neal Brown walked out the front door of the residence and watched as officers drove past

(See State's Ex. 1, Suppression Hearing).

{¶13} In addition to submitting the affidavit, the trial judge and Investigator Howard engaged in a conversation regarding the search warrant for purposes of establishing the reasons why the officers were asking for a no-knock and nighttime search warrant. (State's Ex. 13, Suppression Hearing). The transcript of this conversation reveals that Investigator Howard based the information in his affidavit on his own independent knowledge and observations, as well as those of other officers and agents of the Allen County Sheriff's Department, and two different confidential informants, both of whom had proven credible and reliable. (Id.). Based on this affidavit, the trial judge issued and executed the requested search warrant for 110 E. 14th Street, Lima, Allen County, Ohio. (State's Ex. 2, Suppression Hearing). As a result of the execution of the

search warrant for 110 E. 14th Street, law enforcement discovered and ultimately seized several packages of cocaine and crack cocaine, related drug paraphernalia, firearms, and ammunition.

{¶14} Consequently, Brown challenged the evidence obtained as a result of the search warrant mostly on the basis that the information regarding William Neal Brown of Florida in the affidavit for the search warrant had been false, and, as a result, that the judiciary had been misled by law enforcement officers in the issuance of the warrant.

{¶15} At the suppression hearing, Investigator Howard acknowledged that, at the time of the suppression hearing, there was still some confusion as to the actual identity of the defendant. (July 21, 2009 Tr. at 7). Investigator Howard stated that prior to requesting the search warrant they had run "Neal D. Brown" through the OHLEG computer program, and then had run the social security number through the LEADS computer program and obtained an FBI number. (July 21, 2009 Tr. at 14). He then said that they had used that FBI number to run a criminal history ("CCH") check through LEADS, which resulted in a "William Neal Brown" out of Florida that used an alias of "Neal D. Brown." (July 21, 2009 Tr. at 46). While Investigator Howard acknowledged that the William Neal Brown in Florida had a different social security number and a similar but different birth date than the defendant, he said that it was not uncommon for drug

traffickers to use an alias that has different marks of identification. (Id. at 47). Nevertheless, at the second day of the suppression hearing, Investigator Howard testified he had since discovered that the Neal Brown in this particular matter was not the same Neal Brown whose prior record from Florida was used in the search warrant affidavit. (July 28, 2009 Tr. at 6). However, Investigator Howard made it clear that prior to obtaining the search warrant, he had had no reason to believe that the information he included regarding the prior record of Neal Brown of Florida belonged to someone other than the defendant. (Id. at 5). Further, Investigator Howard indicated that the only reason he had listed the prior record was to demonstrate "the safety of the officers serving the warrant" since they were requesting a no-knock search warrant. (Id. at 6).

{¶16} In addition to Investigator Howard's testimony, Investigator Brian McKinney with the Allen County Sheriff's Department, who was also assigned to the West Central Ohio Crime Task Force, testified at the suppression hearing. Investigator McKinney testified that he had been involved in the investigation of Neal Brown and 110 E. 14th Street, and had assisted in obtaining the additional search warrants executed for 110 E. 14th Street and Neal Brown. (July 28, 2009 Tr. at 27). On cross-examination, Investigator McKinney corroborated Investigator Howard's testimony that when they had run Neal Brown's information in the computer programs, they discovered a William Neal Brown

who had a substantial criminal record down in Florida. (Id. at 42). Investigator McKinney stated that he became concerned for officers' safety in light of this information, and that while the information on William Neal Brown did not exactly match up with the information on Neal Brown in Ohio, he said that "[i]t was similar enough for me to believe that it was a good chance that it was the same person." (Id. at 42-43). Nevertheless, Investigator McKinney explicitly stated that at the time they obtained the information on William Neal Brown from Florida, he "believed one hundred percent of the time that it was the same individual." (Id. at 44). Moreover, he said that he "had absolutely no reason to believe that it was anyone different." (Id. at 49). In fact, concerning the different birth dates and social security numbers, Investigator McKinney said "that's not uncommon for uh, some people affiliated with the drug trade." (Id. at 52).

{¶17} After the presentation of evidence at the suppression hearing, the trial court denied Brown's motion to suppress, and in its judgment entry, held as follows:

> **Much time and effort has been set forth dealing with the fact that a William Neal Brown in Florida showed an extensive criminal record, some being acts of violence. While this information proved to be mistaken as it concerns the defendant herein, this had little if anything to do with the basis of probable cause for the search warrant. There was sufficient probable cause without any information concerning the Florida William Neal Brown. The only real reason for inclusion of said information dealt with the "no knock" provision to protect the safety of law enforcement.**

- 11 -

(Aug. 24, 2009 JE).

{¶18} Brown first claims that the trial court erred in denying his motion to suppress because it was clear that law enforcement officers had intentionally misled the judiciary in material facts that were used to support the issuance of the warrant. In particular, Brown claims that the information in Investigator Howard's affidavit regarding the alleged prior record of Neal Brown in Florida was incorrect – that the William Neal Brown in Florida who had all of the violent felony convictions was not the Neal Brown involved in this particular case. As a result, Brown claims that the trial court erred in finding that the information about William Neal Brown of Florida was irrelevant to the probable cause determination for the search warrant, and finding that even without this information probable cause existed. We disagree.

{¶19} First of all, the information on William Neal Brown was from back in 1989 and 1993, and therefore given the significant lapse in time, the information would have been stale for purposes of a probable cause determination. Second, the information regarding William Neal Brown's prior criminal record was irrelevant to the determination of whether there was a fair probability that contraband or evidence of a crime will be found at 110 E. 14th Street, Lima, Allen County, Ohio. In fact, both Investigator Howard and Investigator McKinney testified at the suppression hearing that the sole reason the information regarding a

prior record for Neal Brown was included in the affidavit was to demonstrate one of the bases for the officers' belief that officer safety would be in jeopardy absent a no-knock provision in the warrant. Thus, the only purpose for putting the information regarding a prior criminal record of Neal Brown in the affidavit was to justify the law enforcement officer's request for a no-knock warrant due to the concern for officer safety.[1]

{¶20} Furthermore, we believe that there was sufficient information contained in the affidavit that established a fair probability that contraband would be found at 110 E. 14th Street, even absent the information about the prior record of William Neal Brown from Florida. There was the indication that the crack cocaine purchased during a controlled drug buy on September 2, 2008 came from 110 E. 14th Street, Lima, Allen County, Ohio and was obtained by Lindsay Gamble. Two known, credible and reliable confidential informants indicated that Neal Brown was known to live at that address, was believed to be trafficking in drugs, and was known to be associated with Lindsay Gamble. Moreover, law enforcement officers had driven by the 110 E. 14th Street residence prior to requesting a search warrant, and observed Lindsay Gamble for a second time at

---

[1] We note that despite the incorrect information regarding Brown's alleged prior violent felony record, there was additional information in the affidavit that would have supported the officers' belief that officer safety would be in jeopardy absent a no-knock warrant. In particular, Investigator Howard averred that a confidential informant who had been proven credible and reliable confirmed that Neal Brown was "known also to carry a firearm on his person, and has several at his disposal inside his residence. * * * [and] warned investigators of Neal Brown's potential violence toward law enforcement personnel." (State's Ex. 1, Suppression Hearing).

the residence along with a black male fitting the description of Neal Brown, who walked out of the door of the residence and watched as the officers drove past the house. Finally, these observations and the collection of this information came from law enforcement officers who had specialized training in the field of narcotics and who had a number of years of experience doing these types of investigations. Again, it is only the "probability, and not a prima facie showing, of criminal activity [that] is the standard of probable cause.'" *Gates*, 462 U.S. at 235, quoting *Spinelli*, 393 U.S. at 419, abrogated by *Gates*, supra. Based on the above, we believe that the affidavit contained sufficient information that established a fair probability that contraband would be found at 110 E. 14th Street, even without the incorrect information concerning William Brown's prior criminal record.

{¶21} Nevertheless, we acknowledge that deference to the judge issuing a warrant is not boundless. Notwithstanding the reasonable reliance on a search warrant exception to the Fourth Amendment exclusionary rule, otherwise known as the good faith exception, suppression is an appropriate remedy if the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *United States v. Leon* (1984), 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677. See, also, *George*, 45 Ohio St.3d at 331. Brown claims that Investigator Howard knew or at least acted with reckless disregard for the

truth when he put the information about William Neal Brown's prior violent felony record in his affidavit. In particular, Brown points to Investigator Howard's testimony at the suppression hearing where he acknowledged the fact that William Neal Brown's birth date and social security number were not the same as the corresponding information on Neal Brown from Ohio. Based on this knowledge, Brown claims that Investigator Howard had at least recklessly disregarded the truth of the information.

**{¶22}** However, "[t]o successfully attack the veracity of a facially sufficient search-warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶31, quoting *Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667. Here, there is no evidence that at the time he filled out the affidavit Investigator Howard knew the information about William Neal Brown in Florida was false. While it is true that false information concerning Brown's alleged prior criminal record was included in the affidavit, the evidence in the record indicates that this information was not known to be false until well after the warrant had been executed. Moreover, there is similarly nothing in the record that would support the argument that Investigator Howard had acted in reckless disregard of the truth. "Reckless disregard" has been defined

as that about which the affiant had serious doubts about the truth of an allegation. *McKnight*, 107 Ohio St.3d at 105-06, citing *United States v. Williams* (C.A.7, 1984), 737 F.2d 594, 602. Here, both Investigator Howard and Investigator McKinney testified that they had had no reason to doubt that the William Neal Brown in Florida was the same Neal Brown in Ohio. Even in light of the discrepancies between the birth dates and social security numbers, both Investigator Howard and Investigator McKinney testified that those were not significant concerns considering that drug traffickers will use aliases with similar, but different personal information. Overall, despite Brown's arguments to the contrary, there is just nothing in the record that indicates that Investigator Howard knew that the information concerning William Neal Brown of Florida was false, or that he would have known it was false except for his reckless disregard of the truth at the time he filled out the affidavit for the search warrant.

{¶23} Nonetheless, even if this Court were to find that Investigator Howard had known or had at least been reckless as to the truth of the information about William Neal Brown's prior criminal record and, thus, had misled the trial judge who had issued the search warrant, we would then next have to find that the false information was necessary to the finding of probable cause. See *Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 171-72, 98 S.Ct. 2674, 57 L.Ed.2d 667. "[A] search warrant is still valid even though it is based on an affidavit containing

false statements or omissions, unless, after including the omissions, 'the affidavit's remaining content is insufficient to establish probable cause.'" *State v. Bell*, 12th Dist. No. CA2008-05-044, 2009-Ohio-2335, ¶9, quoting *State v. Sells*, 2nd Dist. No. 2005-CA-8, 2006-Ohio-1859, ¶11, citing *State v. Waddy* (1992), 63 Ohio St.3d 424, 411, 588 N.E.2d 819, superseded on other grounds by constitutional amendment as stated in *State v. Smith* (1997), 80 Ohio St.3d 89, 103, fn.4, 684 N.E.2d 668 (citations omitted). See, also, *State v. Underwood*, 4th Dist. No. 03CA2930, 2005-Ohio-2309, ¶¶29-32. As we stated above, not only do we believe that the incorrect information was irrelevant to the probable cause determination, even disregarding the information concerning the prior violent felony convictions from William Neal Brown in Florida, we believe that there was still enough information in the affidavit to have provided a substantial basis for the judge's conclusion that there was a fair probability that illegal drugs would be found at 110 E. 14th Street, Lima, Ohio.

{¶24} Though not to the same extent, next Brown also briefly argues that the affidavit for the search warrant was also problematic in that Investigator Howard did not have personal knowledge as to all of the information he had put in his affidavit. However, as this Court has previously stated:

> **[S]tatements made to fellow police officers in the same investigation are an inherently reliable basis for another police officer to create an affidavit for a search warrant. So long as the officer reasonably believes the information to be true, hearsay**

> **information may be relied upon by an affiant, especially since practical considerations often require reliance on information provided by other sources.**

*State v. Bradley* (Dec. 5, 1996), 3d Dist. No. 8-95-15, at *6, citing *State v. Henderson* (1990), 51 Ohio St.3d 54, 57, 554 N.E.2d 104, and *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667.  Here, it is clear that Investigator Howard either had personal knowledge of the information in the affidavit or received the information from fellow investigators who were also involved in the investigation.  In addition, Brown claims that the information about the controlled drug buy in the affidavit did not contain adequate details since the law enforcement officer who had followed Gamble to 110 E. 14th Street saw Gamble disappear for 15-20 seconds behind the house, but did not observe any direct exchange of the crack cocaine at the residence.  Nevertheless, we believe that given all of the facts and circumstances surrounding the controlled drug buy that were specified in the affidavit, especially the fact that it was only after Gamble came back from his brief visit to 110 E. 14th Street that the confidential informant was sold the crack cocaine, it was reasonable for law enforcement officers to conclude that the crack cocaine came from 110 E. 14th Street.

{¶25} Finally, Brown argues that even if the original search warrant was supported by probable cause, that it only did so for the dwelling located at 110 E. 14th Street, Lima, Allen County, Ohio, and not for any outbuildings or vehicles

that may have been located on that property as well. Specifically, he claims that even though law enforcement had asked for a search of the entire premises, the actual scope of the search warrant was limited in nature and did not encompass the surrounding curtilage of the property.

{¶26} However, contrary to Brown's argument, the actual search warrant signed by the trial judge on September 3, 2008, clearly stated that:

> **Affidavit having been made before me by Investigator Howard that he has reason to believe that on the premises located at 110 East Fourteenth Street, Perry Township, Allen County, Ohio more specifically described as a one story single family dwelling that sits on the southeast corner of Main Street and Fourteenth Street the residence is light grey in color with black trim and a black shingled roof the numbers 110 are not clearly visible, however after confirming the address with the Allen County Auditors web sight [sic] Affiant was able to positively confirm that the address is 110 East Fourteenth Street,** *as well as any vehicles or outbuildings on said curtillage* **[sic] there is now being concealed certain property, namely Crack/Cocaine, Cocaine, Marijuana, any other controlled substances, drug paraphernalia * * * YOU ARE HEREBY COMMANDED to search forthwith the place named for the property specified.**

(State's Ex. 2, Suppression Hearing)(emphasis added). While the trial judge did not restate the specific location again in his command portion of the search warrant, he specifically incorporated the description of the property listed above in the search warrant, which clearly included "any vehicles or outbuildings on said curtillage [sic]." Therefore, we find Brown's argument that the scope of the search warrant was limited to just the residence meritless.

{¶27} Overall, we believe that the trial court did not err in denying Brown's motion to suppress the evidence obtained through the execution of the search warrant at 110 E. 14th Street, Lima, Ohio, or any of the additional subsequent evidence obtained as a result of the execution of the original search warrant.

{¶28} Brown's first assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. II

**MR. BROWN WAS DENIED A FAIR TRIAL, IN VIOLATION OF THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION, WHEN THE PROSECUTOR WAS ALLOWED TO COMMENT NEGATIVELY UPON THE ASSERTION BY MR. BROWN OF HIS RIGHT TO COUNSEL AND OF HIS RIGHT TO BE FREE FROM UNWARRANTED AND UNREASONABLE SEARCHES AND SEIZURES OF HIS BODY.**

{¶29} In his second assignment of error, Brown argues that reversible error occurred when testimony concerning Brown's refusal to consent to a DNA sample was introduced during the trial. Brown claims that because he has a constitutional right to refuse to consent to a search under the Fourth Amendment that evidence of his refusal to consent to a search should not have been used against him at trial.

{¶30} Comments relating to a defendant's silence "penalize a defendant for choosing to exercise a constitutional right," and as such, it is improper for evidence to be admitted at trial that a defendant had previously invoked his right to counsel. *State v. Thompson* (1987), 33 Ohio St.3d 1, 4, 514 N.E.2d 407; *Doyle v.*

*Ohio* (1976), 426 U.S. 610, 618-19, 96 S.Ct. 2240, 49 L.Ed.2d 91.   Brown asks that this Court apply the principles established for dealing with prosecution's comments on a defendant's right to remain silent to situations where the prosecution comments on a defendant's failure to consent to a search.   While generally "courts disapprove of penalties imposed for exercising constitutional rights," after reviewing the record, we ultimately find that no reversible error occurred in this particular instance.  *State v. Landrum* (1990), 53 Ohio St.3d 107, 110, 559 N.E.2d 710.

{¶31} Here, during the trial, the State presented DNA evidence that was found on the packaging that contained some of the cocaine.   Testing of that packaging revealed the presence of DNA, including Brown's DNA.   At trial, the State had to establish how the DNA evidence found on the packaging was linked to Brown's DNA, and to do so, it introduced the following testimony from Investigator McKinney:

> **Q    [State]: Okay.  And it's my understanding that you – there has been some evidence preserved from the narcotics that were seized from 110 E. 14th Street, is that correct?**
> **A:    Correct.**
> **Q:    Okay.  And based upon that did you ask the defendant if he would provide a DNA sample?**
> **A:    Yes, Ma'am.**
> **Q:    Okay.  And did he agree to do that?**
> **A:    He did not agree to it.**
> **Q:    Okay.**
> **A:    At which time I prepared a search warrant and presented it to the judge up here in Allen County Common Pleas Court and**

> **they did sign that we had probable cause to obtain DNA from Mr. Brown.**
> **Q:  Okay.  And then was the DNA sample subsequently taken from this defendant?**
> **A:   Yes, Ma'am.**

(Mar. 22-24, 2010 Tr. at 263-64, Vol. I).  At this point, defense counsel asked for the jury to be excused, and then objected to the testimony that had been presented, and moved for a mistrial, or in the alternative, requested a limiting instruction. (Id. at 271-73).  The trial court responded as follows:

> **The Court:  Very well.  The Court will allow the witness to come back.  We're going to take – we'll take a break now.  And I think that would be fair that the State ask question [sic], had Defendant at that time lawyered up, so to speak, or –**
> **Mr. Rexford [Defense Counsel]:  Sure.**
> **The Court:  -- Go into that and is it true that he had the right to – not to give the DNA sample so it can be – if there's any type of error want to make sure that the jury – and I'll instruct the jury accordingly.**
> **Mr. Rexford [Defense Counsel]:  Thank you very much, your honor.**

(Id. at 273).   After which time, defense counsel cross-examined the witness, Investigator McKinney, who acknowledged that Brown had a Fourth Amendment right to refuse to consent to the search for DNA, and that a warrant was obtained after Brown had refused.  (Id. at 289).  In fact, Investigator McKinney responded to defense counsel's inquiry by saying, "I just asked him and he said, 'no.'  It was no big deal.  * * * I wasn't upset about it or anything."  (Id. at 290).  Investigator McKinney then again acknowledged that Brown had a constitutional right and that

there was a particular process and procedure to follow in situations like these in order to protect a defendant's constitutional rights. (Id.).

**{¶32}** Furthermore, after the witness was cross-examined by defense counsel, upon further request for a limiting instruction, the trial court instructed the jury that Brown "had the right to not to incriminate himself and that once he asserted that right the State had the right to get a search warrant." (Id. at 295).

**{¶33}** A review of the testimony above indicates that Investigator McKinney's remark did not amount to reversible error. The remark was only made in an effort to establish the sequence of events regarding how Brown's DNA evidence was used for comparison purposes to the DNA evidence found on the packaging of drugs found at the house. Moreover, defense counsel was given an opportunity to cross-examine Investigator McKinney about the issue. Importantly, as a result of defense counsel's cross-examination, it was made abundantly clear to the jury that Brown had a Fourth Amendment right to refuse to consent to the search, and that obtaining a warrant was just a part of the process in ensuring the protection of his constitutional right. As Investigator McKinney stated, refusing to consent to the DNA search and getting a warrant as a response "was no big deal." In addition, the trial court even issued a limiting instruction to the jury in which it re-iterated to the jury that Brown had the right not to incriminate himself and to require the State to get a warrant for obtaining his DNA. Furthermore, we note

that the State did not make any additional comments regarding Brown's refusal to consent to the DNA search throughout the remainder of the trial, and that overall Brown received a fair trial.

{¶34} Therefore, Brown's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. III

**ALL FOUR COUNTS (I, II, III, AND IV) SHOULD HAVE MERGED INTO ONE (1) CONVICTION AND SHOULD HAVE BEEN SENTENCED AS SUCH.**

{¶35} In his third assignment of error, Brown argues that the four counts of possession of drugs should have been merged into one conviction prior to sentencing.

{¶36} R.C. 2941.25 is Ohio's multiple-count statute, and provides:

**(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

In order to determine whether the trial court should have merged any of the offenses, we must apply the two-step analysis established by the Ohio Supreme Court. *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882,

- 24 -

¶¶10-13, citing *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. See, also, *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶18. This two-step analysis was recently modified by the Ohio Supreme Court in *State v. Johnson*, __ Ohio St.3d __, 2010-Ohio-6314, __ N.E.2d __. First, instead of comparing the elements of the crimes, the Ohio Supreme Court stated in *Johnson* that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger statute, the conduct of the accused must be considered." *Johnson*, 2010-Ohio-6314, at syllabus (overruling *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699). The question now is "whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." Id. at ¶48, citing *Blankenship*, 38 Ohio St.3d at 119 (Whiteside, J., concurring) (emphasis in original). "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." Id. Consequently, if the offenses are found to be allied offenses of similar import, then the court must proceed to the second step, in which it will consider "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" Id. at ¶49, quoting *Brown*, 2008-Ohio-4569, at ¶50 (Lanzinger, J., dissenting). "If the court finds either that the crimes were committed separately or that there was a

separate animus for each crime, the defendant may be convicted of both offenses." *Brown*, 2008-Ohio-4569, at ¶19, citing *Blankenship*, 38 Ohio St.3d at 117. Additionally, because this assignment of error presents a question of law, our standard of review is de novo. *State v. Loomis*, 11th Dist. No. 2002-A-0102, 2005-Ohio-1103, ¶8, citing *State v. Ellenburg* (July 9, 1998), 4th Dist. No. 97CA597, at *3.

**{¶37}** Brown first argues that there is really only one general drug of "cocaine," and that there is no real distinction between crack cocaine and powder cocaine since crack cocaine is really just a form of powder cocaine. Thus, since all of the possession acts were committed simultaneously, he argues that he should have only been convicted of one possession charge. We disagree.

**{¶38}** R.C. 2925.11(A) states "[n]o person shall knowingly obtain, possess, or use a controlled substance," and depending on the particular type and quantity of the controlled substance involved, R.C. 2925.11(C) provides the title or and penalty for the offense.

**{¶39}** Here, Brown was charged and convicted of the following: count one of possession of crack cocaine in an amount equal to or exceeding ten grams but not exceeding twenty-five grams in violation of R.C. 2925.11(A)&(C)(4)(d), a felony of the second degree; count two of possession of cocaine in an amount equal to or exceeding one thousand grams in violation of R.C.

2925.11(A)&(C)(4)(f), a major drug offender felony of the first degree; count three of possession of crack cocaine in an amount equal to or exceeding one gram but not exceeding five grams in violation of R.C. 2925.11(A)&(C)(4)(b), a felony of the fourth degree; and count four of possession of cocaine in an amount equal to or exceeding five grams but not exceeding twenty-five grams in violation of R.C. 2925.11(A)&(C)(4)(b), a felony of the fourth degree.

{¶40} While each possession count was charged under the same statutory provision, the Ohio Supreme Court has explicitly held that the simultaneous possession of different types of controlled substances can constitute multiple offenses. *State v. Delfino* (1986), 22 Ohio St.3d 270, 490 N.E.2d 884. In doing so, the Ohio Supreme Court based its analysis on the principles set forth in the United States Supreme Court decision in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed.2d 306:

> **[E]ven though the *Blockburger* test cannot be applied directly to a situation where it is alleged that a single transaction constitutes separate offenses under a single statutory provision, the *Blockburger* test can be used to ascertain whether the legislature intended to have a single transaction constitute separate offenses even though they are proscribed by a single statutory provision. If the legislature intended to have the possession of different types of drugs constitute different offenses, then a second prosecution for possession of a different drug will not be barred by principles of double jeopardy.**

*Delfino*, 22 Ohio St.3d at 273 (internal citations omitted). As a result, the Court determined that the legislature had intended that the simultaneous possession of

certain drugs could be considered separate offenses, and when considering the possession of cocaine and marijuana, the Court further stated:

> **Applying the *Blockburger* test herein, we find that the legislature intended the simultaneous possession of certain drugs can constitute separate offenses. Under the provisions of R.C. 2925.11(C)(1), possession of cocaine is a felony. Under R.C. 2925.11(C)(2), possession of a Schedule III, IV or V controlled substance is a third degree misdemeanor. Under R.C. 2925.11(C)(3), possession of less than one hundred grams of marijuana is a minor misdemeanor and possession of more than that is a fourth degree misdemeanor. Proof of possession of marijuana will not sustain a conviction for possession of cocaine. Likewise, proof of possession of cocaine will not sustain a conviction for possession of marijuana. Therefore, conviction of a felony under R.C. 2925.11(C)(1) requires proof of facts that R.C. 2925.11(C)(2) or 2925.11(C)(3) do not.**

Id. at 274.

{¶41} Here, Brown was ultimately found guilty of committing two separate counts of possession of cocaine and two separate counts of possession of crack cocaine. Brown argues that there is really only one general drug of "cocaine" and there is no real distinction between crack cocaine and powder cocaine because crack cocaine is really just a form of powder cocaine. However, "[t]his Court has previously recognized that although there is no distinction between powder cocaine and crack cocaine in the schedule definitions, the specific penalty provisions under R.C. 2925.11(C)(4) show that the legislature clearly intended a distinction." *State v. Blandin*, 3d Dist. No. 1-06-107, 2007-Ohio-6418, ¶30, citing *State v. Crisp*, 3d Dist. No. 1-05-45, 2006-Ohio-2509. See, also, *State v. Ligon*, 3d

Dist. No. 4-08-21, 2008-Ohio-6085, ¶¶31-36 (finding *Blandin's* reasoning persuasive and finding that convictions for trafficking in crack cocaine and trafficking in cocaine should not have merged because the offenses are separate and distinct and were committed with separate animus). Additionally, in *Crisp*, we noted that "such harsher penalties for crack cocaine are justified because crack cocaine 'is more potent, because of the way it is ingested, than powder cocaine, and therefore is more dangerous to the user, and to society in general.'" Id. at ¶22, quoting *State v. Bryant* (July 17, 1998), 2nd Dist. No. 16809, at *4. As the Ohio Supreme Court noted in *Johnson*, "[i]n determining whether two offenses should be merged, the intent of the General Assembly is controlling." *Johnson*, 2010-Ohio-6314, at ¶46. Accordingly, this Court finds that the simultaneous possession of crack cocaine and possession of powder cocaine are separate and distinct offenses.

{¶42} Next, Brown argues that even if the simultaneous possession of crack cocaine and powder cocaine can be considered multiple offenses, then he still should have been convicted only of one act of possession of crack cocaine and one act of possession of powder cocaine since they had been committed at the same time and with the same animus. We disagree.

{¶43} In this particular case, we believe the two separate counts regarding the possession of cocaine and the two separate counts regarding the possession of

crack cocaine were appropriate. The record indicates that crack cocaine forming the basis in count one was found on the front passenger seat of the Chevy Tahoe that was only a few feet away from the residence, and which was found wrapped in a shop cloth and contained in a small plastic baggie. (Mar. 22-24, 2010 Tr. at 246-50, Vol. I). In addition, the crack cocaine forming the basis for the charge in count three was found inside the house in the kitchen in three white mason jars and in a separate plastic bag found on top of the kitchen cupboards. (Id. at 499-516, 502, 311-12, Vols. I & II). Similarly, the powder cocaine forming the basis for the charge in count two was found inside the trunk of the Hyundai, which was located in the locked unattached garage on the property. (Id. at 322-25, Vol. I). This cocaine was found as three individually wrapped bricks, totaling about three kilos worth of cocaine, which were all found in a yellow bag inside the trunk. (Id.). In addition, the powder cocaine forming the basis for count four was found inside the house on top of the kitchen cupboards and which was being stored in a plastic baggie and was next to the baggie of crack cocaine, a scale, and keys to the Hyundai. (Id. at 499-516, Vol. II).

{¶44} Essentially, law enforcement found separate quantities of the crack cocaine and powdered cocaine in separate locations. Moreover, the separate quantities of the crack cocaine and the powdered cocaine were also stored in different types of containers. Furthermore, the amount of each quantity of the

crack cocaine and powdered cocaine found inside the house differed significantly from the other crack cocaine and powdered cocaine found outside in the vehicles. Therefore, we find that the trial court did not err in sentencing Brown separately for the individual possession of crack cocaine and possession of cocaine charges since there was evidence that they had been committed separately and with separate animus. See *State v. Jones*, 9th Dist. No. 25032, 2010-Ohio-4455, ¶17 (finding that the two possessions of heroin charges were committed separately since they had been found in separate locations within the residence, had been stored in different containers, and had been found in different quantities).

{¶45} Accordingly, we find that the trial court did not err in sentencing Brown on each of the four counts since crack cocaine and powdered cocaine are separate offenses, and each count of the possessions of crack cocaine and powdered cocaine were committed separately or with separate animus. See *Blandin*, 2007-Ohio-6418, at ¶30, citing *State v. Wilder*, 2nd Dist. No. 20966, 2006-Ohio-1975; *Jones*, 2010-Ohio-4455, at ¶17.

{¶46} Brown's third assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. IV

**THE SENTENCE IMPOSED IN THIS CASE WAS UNLAWFUL, AS CRUEL AND UNUSUAL PUNISHMENT AND TO CUMULATIVE PUNISHMENTS FOR THE SAME OFFENSE, IN VIOLATION OF RIGHTS UNDER THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION TO BE FREE FROM CRUEL AND**

**UNUSUAL PUNISHMENTS AND TO BE NOT TWICE PLACED IN JEOPARDY FOR THE SAME OFFENSE.**

**{¶47}** In his fourth assignment of error, Brown claims that his sentence was cruel and unusual and also in violation of the prohibition against double jeopardy. Specifically, Brown asserts the same argument as he put forth in his third assignment of error, but in this assignment of error claims that there were constitutional violations from a failure to merge all of his convictions into a single conviction.

**{¶48}** However, for the reasons as stated above, because we find that Brown's convictions were not required by law to be merged, we likewise find that Brown's sentence was not cruel or unusual nor was he placed in jeopardy for the same crime.

**{¶49}** Brown's fourth assignment of error is, therefore, overruled.

**ASSIGNMENT OF ERROR NO. V**

**THE TRIAL COURT VIOLATED MR. BROWN'S CONSTITUTIONAL RIGHT UNDER BOTH THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION TO REMAIN SILENT BY COMMENTING NEGATIVELY UPON HIS CONTINUED ASSERTION OF THAT RIGHT AT SENTENCING.**

**ASSIGNMENT OF ERROR NO. VI**

**THE OHIO REVISED CODE UNLAWFULLY AND UNCONSTITUTIONALLY REQUIRES THE SENTENCING JUDGE TO CONSIDER WHETHER THE ACCUSED**

**"SHOWED GENUINE REMORSE," THEREBY PLACING A PENALTY ON THE REFUSAL TO MAKE A STATEMENT AT SENTENCING, IN VIOLATION OF THE RIGHT UNDER THE OHIO CONSTITUTION AND UNDER THE UNITED STATES CONSTITUTION TO REMAIN SILENT.**

{¶50} In his fifth and sixth assignments of error, Brown argues that the trial court inappropriately used his post-trial silence against him when applying the sentencing guidelines. In particular, Brown claims that because he was maintaining his innocence he did not comment during the sentencing hearing, and based on his silence, the trial court impermissibly found that he displayed a lack of remorse for his actions. Consequently, Brown additionally argues that the sentencing guidelines pertaining to a defendant's display of a lack of remorse violate a defendant's constitutional right to remain silent.

{¶51} Whether a defendant shows genuine remorse is just one of several factors the trial court may consider in assessing whether the defendant is likely to commit a future crime. R.C. 2929.12(D)(5) and (E)(5). Despite Brown's arguments to the contrary, it has been held that "'lack of remorse is an appropriate consideration for sentencing, even for a convicted defendant who maintains his innocence.'" *State v. Caver*, 8th Dist. No. 91443, 2009-Ohio-1272, ¶122 fn.11, quoting *State v. Farley*, 2nd Dist. No. 2002-CA-2, 2002-Ohio-6192, ¶54. See, also, *State v. Russell*, 8th Dist. No. 88008, 2007-Ohio-2108, ¶23; *State v. Schaub*, 2nd Dist. No. 20394, 2005-Ohio-3328, ¶23. Moreover, it is well settled that

credibility is for the trier of fact and that a reviewing court should give deference to its decision where there exists competent credible evidence to support such findings. *Caver*, 2009-Ohio-1272, at ¶122, citing *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742. "[T]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Furthermore, we note that, "'ninety percent of the total meaning of testimony is interpreted through non-verbal behavior, such as voice inflections, hand gestures, and the overall visual demeanor of the witness. The witness' choice of words accounts for only ten percent of the meaning of their testimony.'" *Caver*, 2009-Ohio-1272, at ¶123, quoting *State v. Evans* (1993), 67 Ohio St.3d 405, 410-11, 618 N.E.2d 162.

**{¶52}** Here, the sentencing judge who presided over the trial was in the best position to assess Brown's remorse, and therefore, we give deference to his finding.

**{¶53}** Brown's fifth and sixth assignments of error are, therefore, overruled.

## ASSIGNMENT OF ERROR NO. VII

**THE SENTENCE IMPOSED IN THIS CASE WAS ALSO A RETALIATORY SENTENCE PUNISHING ASSERTION OF THE RIGHT TO A TRIAL BY JURY.**

{¶54} In his seventh assignment of error, Brown argues that the sentence imposed was done in retaliation for Brown having asserted his right to a trial. In support of this argument, Brown claims that prior to trial the trial court had indicated that a low-to-middle range sentence (2-5 years of incarceration) would be appropriate if Brown were to enter into a plea agreement. However, after trial, Brown was ultimately sentenced to twenty-five (25) years incarceration. Brown claims that given the substantial increase in his sentence, "the only plausible conclusion is that the increase of sentence was retaliatory for assertion of the right to remain silent, as argued earlier, and/or of the right to trial by jury." (Appellant's Brief at 25).

{¶55} While Brown claims that the trial court improperly penalized him for taking his case to trial, instead of taking a negotiated plea, this Court cannot find any evidence in the record to support his claim.[2] Moreover, we note that the terms imposed on each of the counts fall within the statutory ranges provided in R.C. 2929.14(A)(1), (2), (4), & (D)(3)(b), and that Brown was sentenced to a less-than-maximum sentence on each of the four counts of which he was found guilty. Even still, not only is there nothing in the record to support Brown's claim that he could

---

[2] We note that at oral arguments, defense counsel stated that there had been a recording of the pre-trial discussion in which the trial court had allegedly indicated that if Brown were to plead, he would receive a "low-to-middle" range sentence; however, when it came time to supplement the record for purposes of this appeal, defense counsel acknowledged to this Court that he had opted not to file the alleged recording of the pre-trial discussion.

have received a low-to-middle sentence if he had pled guilty, but there is simply nothing in the record that would indicate that the trial court imposed the twenty-five (25) years in prison as "'a price for ignoring the court's plea bargain recommendation.'" *State v. Shoe* (Dec. 16, 1992), 3d Dist. No. 5-92-12, at *2-3, quoting *Columbus v. Bee* (1979), 67 Ohio App.2d 65, 77, 425 N.E.2d 409. As a result, we decline to presume such conduct occurred without any affirmative demonstration as to how the trial court's sentence was in retaliation for Brown's assertion of his right to remain silent and/or right to be tried by a jury. See *State v. Hottle* (Dec. 17, 1991), 10th Dist. No. 91AP-724, at *3, citing *State v. Ramey* (Nov. 23, 1979), 10th Dist. No 79AP-96, at *6.

**{¶56}** Brown's seventh assignment of error is, therefore, overruled.

**{¶57}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**/jlr**

**ROGERS, P.J., DISSENTS:**

**{¶58}** I respectfully dissent from the opinion of the majority.

{¶59} As to the first assignment of error, my first concern is with the underlying assumption that a man walking behind a house for 15-20 seconds justifies issuing a search warrant for the interior of that house. Even assuming that the individual did obtain contraband in that vicinity to complete a controlled buy, the facts do not support a conclusion that he entered the house to obtain the contraband, or even that he obtained contraband from someone at the residence. He could have passed through the yard and obtained the contraband from the next house; he could have obtained the contraband from an individual, whether a resident of the house or from another individual with no connection to that residence; or he could have obtained the contraband from some container near that residence, or another, but outside either house. In fact, the time sequence clearly indicates that he did not have time to enter the residence in question.

{¶60} But the above observations are only the tip of the iceberg! Investigator Howard not only wanted a search warrant for a residence he had no knowledge the suspect had entered, but he also wanted to search the cars and outbuildings which he knew the suspect had not entered, and permission for a no-knock and a nighttime search. In support of the no-knock provision, the investigator related the Florida criminal history of some individual with a similar name. However, he withheld from the issuing magistrate the fact that the name was not the same and that the birth date and social security number were different,

and the investigator's testimony to the judge specifically relied on the Florida information. The majority rationalizes that there was sufficient evidence to justify issuance of the warrant and for the no-knock provision without the information about the Florida individual, and that the questions about whether it was the same individual that now resided in the house to be searched in Ohio would not have affected the judge's decision to issue the search warrant. However, the point is we will never know because the investigator withheld that information. The investigator knew full well that the difference in name, birth date, and social security number weakened his argument, so he did not inform the judge of these issues.

{¶61} Next, the affidavit requesting the search warrant makes no mention of any basis for searching the vehicles or other outbuildings and there is no attempt to justify it in the investigator's taped testimony; he simply includes them in the description of the place to be searched. Finally, the search warrant itself contained no authority for a no-knock entry, or for a nighttime search. The warrant actually authorizes only a daytime search, and reads: "* * * making the search at any time in the daytime * * *."[3] (State's Ex. 2, Suppression Hearing)

---

[3] Interestingly, below the judge's signature on the search warrant, there is a paragraph defining "daytime" and stating that a search made at any other time "* * * must be specifically authorized by the judge issuing the Search Warrant* * *." A second paragraph refers to Crim. R. 41(B). The third paragraph below the judge's signature purports to aver that "[t]he statutory precondition for nonconsensual entry is hereby waived as there is probable cause to believe * * *." (State's Ex. 2, Suppression Hearing) However, because this waiver comes below the judge's signature it cannot be interpreted as having been approved and authorized by the judge as a part of the search warrant.

{¶62} For the reasons stated above I would sustain the first assignment of error, reverse the conviction, and remand the matter back to the trial court, and further find the remaining assignments of error to be moot.

{¶63} However, because the majority addressed the remaining assignments of error, I will add a comment on the second assignment. It was absolutely unnecessary and improper for the prosecutor to inquire of Investigator McKinney whether he had asked Brown if he would provide a DNA sample. The question was not necessary to demonstrate how the DNA sample was obtained. The state only needed to show that it was obtained. Further, the prosecutor knew, or should have known, that the response would require McKinney to comment on the fact that Brown exercised his constitutional right to refuse.

{¶64} The objection should have been raised as soon as the question was asked; not after a response and further discussion. Because the objection was delayed, the response could not then be prevented. However, after the objection was raised, both the question and the response should have been stricken and the jury should have been instructed to disregard them.

{¶65} Regardless, Appellant proceeded to make the objection moot by cross-examining the witness on the issue of the refusal and the suspect's right to refuse. It may well have appeared to counsel to be a "Catch 22" situation. There were two choices at that point. Either counsel tried to repair the damage by cross-

examination, or counsel allowed the objection to stand so that it might be raised on appeal. Often times during trial, tough choices must be made on the spur of the moment. Once made, the choice can seldom be undone. Here, the strategy chosen of cross-examination means that any objection to the state's improper question and the response was waived and I would concur with the result reached by the majority on the second assignment of error.

{¶66} As to the remaining assignments of error, three through seven, I would concur with the majority opinion.

/jlr