[Cite as *State v. Stuward*, 2017-Ohio-2918.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  13-16-29

    v.

PATRICIA STUWARD,                 O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Seneca County Common Pleas Court**
**Trial Court No. 16-CR-0019**

**Judgment Affirmed**

**Date of Decision:  May 22, 2017**

---

**APPEARANCES:**

    *James A. Davey* **for Appellant**

    *Stephanie J. Reed* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant Patricia Stuward ("Stuward") appeals her September 14, 2016 convictions from the Seneca Court of Common Pleas of one count of theft from an elderly person, one count of attempted theft from an elderly person, and one count of telecommunications fraud, all felonies of the third degree. Stuward alleges that the trial court erred by failing to merge the telecommunications fraud conviction with her theft from an elderly person and attempted theft from an elderly person convictions. For the reasons that follow, we affirm.

*Facts and Statement of the Case*

{¶2} On November 24th, 2015, Ms. Veda Joyce Kidd ("Ms. Kidd"), then 74 years old, began communicating with a person whom Ms. Kidd believed was General Gary Patten ("General Patten") via Facebook Messenger. During the course of their exchanges, approximately two to three times a day, Ms. Kidd was led to believe that General Patten was in love with her and they were going to get married. General Patten also told Ms. Kidd that he was going to receive $800,000 from the United Nations because he cleared a drug ring in Syria. General Patten informed Ms. Kidd that he would send her the money if she provided him with her full name, address, phone number, and date of birth. General Patten also informed Ms. Kidd that the money he was to receive would be sent to her home.

{¶3} In January of 2016, Ms. Kidd was contacted by Stuward, identifying herself as "Fatima," who indicated that she represented the agent assigned to deliver General Patten's "two packages of money" to Ms. Kidd. Stuward informed Ms. Kidd that she was going to have the packages delivered to Ms. Kidd's home, but needed $16,000 to "clear the packages at the port." Stuward was in phone contact with Ms. Kidd daily and arranged to visit Ms. Kidd's home to personally pick up the $16,000 port fee. Based on Stuward's demands, Ms. Kidd cashed in her annuities to pay the requested "fees."

{¶4} On January 8, 2016, Stuward, still under the guise of Fatima, went to Ms. Kidd's home along with Sampson Cojolo ("Cojolo") to pick up Ms. Kidd's money. Ms. Kidd delivered the $16,000 to Stuward and Cojolo as directed. Thereafter, Stuward and Cojolo told Ms. Kidd they were leaving to pick up her money at the port. Approximately three hours later Stuward and Cojolo returned to Ms. Kidd's home with a safe containing paper that would turn into money when sprayed with a special solution. However, Stuward and Cojolo did not have enough solution to process all of the paper in the safe and requested that Ms. Kidd give them more money to obtain more solution.

{¶5} Ms. Kidd agreed to pay Stuward and Cojolo $45,000 for the additional solution and applied for a home equity loan. However, after applying for the loan Ms. Kidd became suspicious of the request and contacted the police.

**{¶6}** The Fostoria Police Department advised Ms. Kidd to stay in contact with Stuward. Stuward continued to phone Ms. Kidd regularly to determine if she had the extra money. Stuward eventually requested Ms. Kidd to obtain more than $45,000. In response, Ms. Kidd informed Stuward that she could get $53,000 by January 22, 2016. On January 21, 2016 Stuward contacted Ms. Kidd to confirm she would pick up the $53,000 the following day. After more phone calls by Stuward to Ms. Kidd, Stuward and Cojolo went to Ms. Kidd's residence on January 22, 2016, where they were arrested by law enforcement upon their arrival.

*Procedural History*

**{¶7}** On February 17, 2016 Stuward was indicted on three different counts by the Seneca County Grand Jury: Count One, Theft from an Elderly Person, in violation of R.C. 2913.02(A)(3), (B)(3), a felony of the third degree; Count Two, Attempted Theft from an Elderly Person, in violation of R.C. 2923.02(A), (E)(1) and R.C. 2913.02(A)(3),(B)(3), a felony of the third degree; and Count Three, Telecommunications Fraud, in violation of R.C. 2913.05(A),(C), a felony of the third degree. The case proceeded to a jury trial on September 13, 2016 and on September 14, 2016, Stuward was found guilty of all three charges. On October 25, 2016 the trial court sentenced Stuward to eighteen (18) months in prison on each of the three counts, ordering all counts to be served consecutive to each other for a total

term of imprisonment of fifty-four (54) months. Stuward now appeals, and presents one assignment of error for our review:

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO CONSECUTIVE SENTENCES ON EACH OF THE THREE COUNTS OF WHICH SHE WAS FOUND GUILTY BECAUSE COUNT THREE WAS AN ALLIED OFFENSE OF SIMILAR IMPORT THAT MERGED WITH COUNTS ONE AND TWO.**

**{¶8}** On appeal, Stuward challenges the trial court's imposition of eighteen (18) months imprisonment for Count Three, alleging that Count Three should have merged with Counts One and Two as allied offenses of similar import. Specifically, Stuward contends that the phone communication with Ms. Kidd was an inseparable part of the theft offenses because without phone communication no arrangements would have been made for the commission of the theft offenses. We disagree.

*Standard of Review*

**{¶9}** "'A defendant bears the burden of proving that the offenses for which he has been convicted and sentenced constitute allied offenses of similar import.'" *State v. Vanausdal,* 3rd Dist. Shelby No. 17-16-06, 2016-Ohio-7735, ¶ 7, quoting *State v. Campbell,* 12th Dist. Butler No. CA2014-06-137, 2015-Ohio-1409, ¶ 18, citing *State v. Luong,* 12th Dist. Butler No. CA2011-06-110, 2012-Ohio-4520, ¶ 46. Additionally, a reviewing court may look to the information contained in the record to make its allied offense determination. *Id.* An appellate court then reviews *de*

*novo* the question of whether offenses are allied offenses of similar import. *State v. Potts,* 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 93 (3rd Dist.), citing *State v. Stall,* 3rd Dist. Crawford No. 3-10-12, 2011-Ohio-5733, ¶ 15, citing *State v. Brown,* 3rd Dist. Allen No. 1-10-31, 2011-Ohio-1461, ¶ 36.

*R.C. 2941.25, Allied Offenses of Similar Import*

Ohio's multiple-count statute, codified in R.C. 2941.25, states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶10} In *State v. Ruff,* the Supreme Court promulgated the following three-part test for determining whether offenses merged: "[u]nder R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 (2015),

paragraph three of the syllabus. An affirmative answer to any of the preceding questions will permit separate convictions. *Id.* at ¶ 31.

*Analysis*

**{¶11}** Stuward was convicted of Theft from an Elderly Person, in violation of R.C. 2913.02(A)(3), (B)(3), which provides, in part:

> No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: by deception. * * * [I]f the victim of the offense is an elderly person, * * * a violation of this section is theft from a person in a protected class * * *. If the value of the property or services stolen is seven thousand five hundred dollars or more and is less than thirty-seven thousand five hundred dollars, theft from a person in a protected class is a felony of the third degree.

R.C. 2913.02(A)(3),(B)(3). Stuward was also convicted of Attempted Theft from an Elderly Person, in violation of R.C. 2923.02(A),(E)(1), and R.C. 2913.02(A)(3),(B)(3), which provides, in part:

> No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense. Whoever violates this section is guilty of an attempt to commit an offense. No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: by deception. * * * [I]f the victim of the offense is an elderly person, * * * a violation of this section is theft from a person in a protected class * * *. If the value of the property or services stolen is seven thousand five hundred dollars or more and is less than thirty-seven thousand five hundred dollars, theft from a person in a protected class is a felony of the third degree.

R.C. 2923.02(A),(E)(1) and R.C. 2913.02(A)(3),(B)(3).

{¶12} Stuward does not allege that these two convictions should merge, because each count refers to a different date and a different theft attempt. However, Stuward contends that her conviction for Telecommunications Fraud should merge with both the theft and the attempted theft charges.

{¶13} Stuward was convicted of Telecommunications Fraud, in violation of R.C. 2913.05(A),(C). That statute provides, in part:

> No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud. Whoever violates this section is guilty of telecommunications fraud. * * * If the value of the benefit obtained by the offender or of the detriment to the victim of the fraud is seven thousand five hundred dollars or more but less than one hundred fifty thousand dollars, telecommunications fraud is a felony of the third degree.

R.C. 2913.05(A),(C). Stuward contends that this conviction should have merged with her two other convictions, because she could not have committed the theft and attempted theft without violating the telecommunications fraud statute.

{¶14} Because an affirmative answer to any of the *Ruff* factors will permit separate convictions, we choose to address the second *Ruff* question first.

{¶15} In regards to the second question posed by the *Ruff* test, whether the conduct shows that the offenses were committed separately, we answer this part of the Ruff test in the affirmative. The evidence demonstrates that Stuward contacted

Ms. Kidd many times by phone prior to the January 8, 2016 theft and many more times before the foiled theft on January 22, 2016.

{¶16} While Stuward's constant telephone contact with Ms. Kidd furthered her overall scheme to scam Ms. Kidd, we find Stuward's act of using the telephone was separate from each theft count. Specifically, and as to the second theft count, Stuward did not use the telephone to put that scheme into motion; such was done by Stuward in person to Ms. Kidd, when she asked Ms. Kidd for $45,000 to obtain more solution to change the blank paper in to money. Hence, it is clear that Stuward's use of the phone was a necessary and constant diversion to keep Ms. Kidd from becoming overly suspicious. Consistent with the decision by our sister appellate court in *State v. Russell*, the telecommunications fraud count does not merge with either the theft or the attempted theft counts herein. *State v. Russell,* 6th Dist. Lucas Nos. L-15-1002, L-15-1003, 2015-Ohio-2802, ¶ 16.

{¶17} With an affirmative answer to the second *Ruff* factor, we decline to address the first and third *Ruff* factors at this time.

{¶18} Accordingly, Stuward's sole assignment of error is hereby overruled.

{¶19} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J, concur.**
**/jlr**